IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FUEL DEPOT, LLC DBA POSADA DEL REY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-00477 |
| | § | |
| WESTCHESTER SURPLUS LINES | § | |
| INSURANCE COMPANY AND | § | |
| KENNETH ANTHONY BARRITEAU, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Fuel Depot LLC dba Posada Del Rey ("Plaintiff" or "Fuel Depot") files this Second Amended Complaint against Defendant Westchester Surplus Lines Insurance Company ("Defendant" or "Westchester"), and in support thereof respectfully shows the Court as follows:

**PARTIES**

1. Plaintiff Fuel Depot LLC dba Posada Del Rey is a Texas limited liability company. Its sole member is Osama Azzam, who is a citizen of the State of Texas. For purposes of diversity jurisdiction, Plaintiff is therefore a citizen of the State of Texas. Plaintiff owns the commercial property located at 200 E Castellano, El Paso, Texas 79912 (the "Property").

2. Defendant Westchester Surplus Lines Insurance Company ("Westchester") is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania.

Westchester is a surplus lines insurer writing business in Texas. Westchester has made an appearance in this civil action.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. Plaintiff is a citizen of Texas and Defendant is a citizen of Pennsylvania.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this action occurred in El Paso, Texas, and the insured Property that is the subject of this action is located in El Paso, Texas.

## FACTUAL BACKGROUND

5. Westchester issued Commercial Property Policy No. FSF16896895 001 (the "Policy") to the named insured with effective dates of coverage from November 9, 2022 to November 9, 2023.

6. The Policy provides coverage for Location 1, Building 3 at 200 E Castellano, El Paso, Texas (Apartment 22) for building coverage in the amount of $550,000, subject to a $5,000 Water Damage Special Deductible.

7. Under the Policy's Causes of Loss — Special Form, "Covered Causes of Loss" means direct physical loss unless excluded or limited. The Policy defines "water damage" as a "specified cause of loss" to include "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system

including its related equipment and parts), that is located on the described premises and contains water or steam."

8. Plaintiff paid all premiums due under the Policy and fully performed all conditions precedent to coverage, or alternatively, any non-performance is excused by Westchester's own conduct, including its breach of the Policy and its waiver of and estoppel from asserting any conditions precedent.

**The Loss**

9. On or about July 15, 2023, Plaintiff's property at 200 E Castellano, Apartment 22, El Paso, Texas suffered sudden and accidental water damage caused by the failure of the building's plumbing system (the "Loss"). The standing water was discovered on July 15, 2023, when the property manager was showing Apartment 22 to a prospective tenant.

10. The plumbing contractor, CRV Construction, investigated the loss and discovered a break in the cast iron drain lines between the kitchen and restroom, as well as a secondary leak in the lines under the kitchen sink and to the dishwasher. The contractor described finding a "hole/break in cast iron drain line" which was repaired with a rubber boot. After the plumbing was repaired, no further leaking occurred. The plumbing invoice is dated July 15, 2023, the same date the Loss was discovered.

11. Water pooled in the kitchen, bathroom, hallway, and living room of Apartment 22, causing direct physical loss and damage to the building structure, including floors, walls, drywall, cabinets, and other building components.

12. At the time of the Loss, the owner, Osama Azzam, was out of the country. Upon returning to the United States and discovering the loss, Plaintiff reported the claim to Westchester in September 2023. Westchester's records reflect inconsistent dates of notice. Its internal reserve and payment request states a date of notice of September 18, 2023, its Declination of Coverage letter states a date reported of September 20, 2023, and its field adjuster's report states that the loss was reported to Crawford Global Technical Services on September 21, 2023. Westchester designated this claim as Claim No. KY23K2859043.

13. Plaintiff had a second, separate water damage claim pending with Westchester at the time, Claim No. KY23K2688730, which involved different units in the same building and carried a date of loss of July 20, 2023 and a report date of July 31, 2023. Westchester assigned the same field adjuster to both claims. That adjuster determined that there was no overlapping damage between the two claims. The allegations of this Second Amended Complaint concern Claim No. KY23K2859043 only.

14. Westchester engaged Crawford Global Technical Services ("Crawford") and assigned adjuster Kenny Barriteau to inspect the Loss. On September 21, 2023, Barriteau advised Plaintiff's public adjuster that the claim had been assigned to him and proposed an inspection date. Barriteau conducted an on-site inspection with Plaintiff and Plaintiff's public adjuster on September 26, 2023.

15. Following the inspection, Crawford prepared a repair estimate. An estimate dated October 10, 2023 totaled $42,615.62 in Replacement Cost Value, $38,866.48 in

Actual Cash Value, and $33,866.48 as the net claim after the applicable deductible. A revised estimate dated October 16, 2023 totaled $43,642.26 in Replacement Cost Value, $40,461.66 in Actual Cash Value, and $35,461.66 as the net claim after the applicable deductible. The October 16, 2023 estimate is the estimate transmitted with Barriteau's narrative report.

16. Barriteau prepared a narrative report of his investigation. In that report Barriteau recorded that Plaintiff's public adjuster had prepared an estimate totaling $44,421.48, that Crawford had prepared a comparable estimate totaling $43,642.26, and that Plaintiff's public adjuster had agreed to Crawford's estimate. Barriteau further recorded in his executive summary that an agreed cost of repairs had been reached with the public adjuster. Under the heading Adjustment and Payment Recommendation, Barriteau wrote that if coverage is afforded, Crawford recommends issuing payment, and set out a breakdown showing a net payment of $35,461.66. Barriteau also wrote that Crawford defers to Westchester for all coverage decisions. No payment was ever made.

17. On October 24, 2023, Westchester's regional general adjuster submitted a reserve and payment request to her manager stating that she had verified Barriteau's recommendations and calculations, that she agreed with Barriteau's recommendation to pay the claim on an actual cash value basis, and that Westchester was recommending payment in the net amount of $35,461.66.

**The Wrongful Denial**

18. On October 6, 2023, Westchester issued a Reservation of Rights letter raising potential coverage concerns.

19. On February 2, 2024 — more than four months after the claim was reported, and more than three months after its own field adjuster had reached an agreed scope of repairs with Plaintiff's public adjuster and recommended payment — Westchester issued a Declination of Coverage letter denying the claim in its entirety.

20. In its Summary of Coverage Position, Westchester stated that its investigation had been prejudiced by the late report and by the lack of response to its requests for information and documentation, that based on the inspection report and the contractor's information it appears that there are three separate losses that have been ongoing over an extended period of time, and that the main source of the water appears to be the tub that filled and overflowed. Westchester denied the claim in its entirety on that basis. The inspection report does not support the conclusion Westchester attributed to it. Barriteau's report states that Crawford observed no evidence of long-term water damage or microbial growth, and that Crawford confirmed the other units in the building were occupied and that the building was at least thirty-one percent rented.

21. Westchester retained no plumber, engineer, metallurgist, or other consultant at any point during its handling of the claim. Its field adjuster reported under the heading Consultants Retained that no consultants had been retained. Its regional general adjuster reported that the use of outside assistance was not expected. No

person with relevant expertise ever examined the drain line, the connected plumbing system, or the loss site, and Westchester obtained no engineering report, laboratory analysis, or expert opinion of any kind. Westchester nonetheless concluded that the cause of the Loss was excluded under the Policy and denied the claim in its entirety on that basis. Westchester never requested that the pipe sections be preserved, produced, or made available for inspection, and never sought to examine the remaining drain line, the connected risers serving the upstairs units, or the loss site through any qualified professional.

22. The Declination of Coverage letter also quotes the water exclusion at CP 10 30 § B.1.g, including the exclusion for water that backs up or overflows or is otherwise discharged from a sewer or drain, the wear and tear and corrosion exclusion at § B.2.d, the continuous or repeated seepage exclusion at § B.2.f, the faulty maintenance exclusion at § B.3.c, the limitation at § C.4, and the Pre-Existing Property Damage Exclusion endorsement, and asserts violations of policy conditions. These grounds are factually unsupported and legally insufficient for the reasons set forth herein.

23. Westchester's denial is wrongful. The Loss constitutes a covered loss under the Policy, including under the Policy's "water damage" specified cause of loss definition, which expressly covers accidental discharge resulting from the breaking apart or cracking of a plumbing system, precisely what occurred here.

## COUNT 1 – BREACH OF CONTRACT

24. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

25. The Policy is a valid and enforceable contract between Plaintiff and Westchester. Plaintiff purchased the Policy, paid all required premiums, and fully performed all conditions precedent to coverage, or such performance has been excused.

26. The Loss suffered by Plaintiff on or about July 15, 2023 constitutes a covered loss under the Policy. The Policy's Causes of Loss — Special Form defines "water damage" as a specified cause of loss to include "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing...system...that is located on the described premises." The Loss resulted from precisely such an accidental discharge of water caused by the breaking apart or cracking of the building's plumbing system, and therefore constitutes a covered loss under the Policy.

27. To the extent Westchester contends any exclusion applies, such exclusions are inapplicable, do not preclude coverage for the resulting water damage to the building structure under the ensuing loss doctrine, and are inconsistent with Westchester's own factual characterizations of the Loss.

28. Westchester breached the Policy by wrongfully denying Plaintiff's claim and refusing to pay the covered benefits owed under the Policy.

29. As a direct and proximate result of Westchester's breach, Plaintiff has suffered actual damages including unpaid policy benefits in an amount no less than $35,461.66 (the net payment recommended by Westchester's own field adjuster and

verified by its regional general adjuster), and up to $43,642.26 in Replacement Cost Value, plus additional damages to be proven at trial.

## COUNT 2 – VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 541

30. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31. Westchester is an insurer engaged in the business of insurance in Texas and is subject to the requirements of Texas Insurance Code Chapter 541.

32. Westchester's conduct constitutes unfair or deceptive acts or practices in the business of insurance in violation of Texas Insurance Code §541.060, including without limitation:

(a) Misrepresenting to Plaintiff material facts relating to the coverage at issue, including by stating in the Declination of Coverage letter that based on the inspection report and the contractor's information it appears that there are three separate losses that have been ongoing over an extended period of time, when the inspection report states that no evidence of long-term water damage was observed, in violation of Tex. Ins. Code §541.060(a)(1);

(b) Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which Westchester's liability had become reasonably clear, including after Westchester's own field adjuster reached an agreed scope of repairs with Plaintiff's public adjuster and recommended payment of $35,461.66 if coverage was afforded, and after Westchester's own

regional general adjuster verified and agreed with that recommendation, in violation of Tex. Ins. Code §541.060(a)(2)(A);

(c) Failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy for the denial of the claim, in violation of Tex. Ins. Code §541.060(a)(3); and

(d) Refusing to pay the claim without conducting a reasonable investigation based on all available information, including information from Westchester's own adjusters and the CRV Construction report, and without retaining any plumber, engineer, metallurgist, or other consultant to evaluate the cause of the pipe failure on which its coverage position depends, in violation of Tex. Ins. Code §541.060(a)(7).

33. As a result of these violations, Plaintiff has suffered actual damages. Plaintiff is entitled to actual damages, court costs, and reasonable attorney's fees pursuant to Texas Insurance Code §541.152. To the extent Westchester's violations were knowing and intentional, Plaintiff seeks additional damages not to exceed three times the actual damages suffered pursuant to §541.152(b).

## COUNT 3 – VIOLATIONS OF TEXAS INSURANCE CODE CHAPTER 542 (PROMPT PAYMENT)

34. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

35. Plaintiff's claim was reported to Westchester in September 2023. Westchester did not issue a denial until February 2, 2024, more than four months

later. The claim was not accepted or paid at any time. This claim does not arise from a force of nature and Chapter 542A does not apply to it.

36. Westchester violated the Texas Prompt Payment of Claims Act, Texas Insurance Code Chapter 542, including without limitation by:

(a) Failing to acknowledge receipt of Plaintiff's claim, commence investigation, and request all items, statements, and forms reasonably believed to be required within the timeframes prescribed by Tex. Ins. Code §542.055;

(b) Failing to accept or deny the claim in whole or in part within fifteen business days after receiving all items, statements, and forms reasonably requested and required, in violation of Tex. Ins. Code §542.056; and

(c) Delaying payment of the claim for more than sixty days after receiving all items, statements, and forms reasonably requested and required, in violation of Tex. Ins. Code §542.058.

37. As a result of Westchester's violations of Chapter 542, Plaintiff is entitled to the full amount of the claim, plus interest at the rate of eighteen percent (18%) per annum on the amount of the claim from the date payment was required, plus reasonable attorney's fees, pursuant to Tex. Ins. Code §542.060.

## COUNT 4 – BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

39. As Plaintiff's insurer, Westchester owed Plaintiff a common law duty of good faith and fair dealing, including the duty to deal fairly and in good faith in the processing and payment of Plaintiff's insurance claim.

40. Westchester breached this duty by, among other things, denying Plaintiff's claim when Westchester knew or should have known that its liability was reasonably clear. Westchester's own field adjuster reached an agreed scope of repairs with Plaintiff's public adjuster and recommended that Westchester pay $35,461.66 if coverage was afforded. Westchester's own regional general adjuster verified that recommendation, agreed with it, and forwarded it within Westchester for approval. Despite this, Westchester issued a blanket denial months later, resting on a conclusion it attributed to the inspection report that the inspection report does not support.

41. Westchester's conduct was more than a bona fide coverage dispute. It reflects a failure to conduct a reasonable investigation, including its failure to retain any plumber, engineer, or metallurgist to evaluate the cause of the pipe failure before denying the claim on that basis, an internally inconsistent coverage position, and a denial issued after Westchester's own representatives had already determined that payment was warranted.

42. As a direct and proximate result of Westchester's breach of the duty of good faith and fair dealing, Plaintiff has suffered actual damages, including the loss of policy benefits, consequential damages, and other damages to be proven at trial.

## COUNT 5 – TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA TIE-IN)

43. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiff is a "consumer" as defined by the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §17.45(4), in that Plaintiff is a business entity that sought and acquired services—specifically, insurance coverage—by purchase.

45. The conduct of Westchester described herein constitutes violations of the DTPA pursuant to the tie-in provision of Texas Insurance Code §541.151, which provides that a person who engages in an unfair or deceptive act or practice in the business of insurance as defined by §541.003 violates the DTPA.

46. Specifically, Westchester's misrepresentations of material facts and policy provisions, including mischaracterizing the damage as pre-existing without factual support, constitute false, misleading, or deceptive acts or practices in violation of Tex. Bus. & Com. Code §17.46.

47. Westchester's conduct was a producing cause of Plaintiff's damages. Plaintiff is entitled to actual damages, and to the extent Westchester's conduct was knowing, to additional damages not to exceed three times the amount of actual damages, plus reasonable attorney's fees and court costs, pursuant to Tex. Bus. & Com. Code §17.50.

## COUNT 6 – ATTORNEY'S FEES

48. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Plaintiff is entitled to recover reasonable attorney's fees and costs pursuant to: (a) Texas Insurance Code §541.152; (b) Texas Insurance Code §542.060; (c) Texas Civil Practice & Remedies Code Chapter 38, as this action is a suit on a written contract; and (d) the Texas DTPA, Tex. Bus. & Com. Code §17.50(d).

## CONDITIONS PRECEDENT

50. All conditions precedent to Plaintiff's right to recover have been performed, have occurred, or have been waived or excused by Westchester's conduct.

## JURY DEMAND

51. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

52. Wherefore, Plaintiff Fuel Depot LLC dba Posada Del Rey respectfully prays that this Court enter judgment in its favor and against Defendant Westchester Surplus Lines Insurance Company, and award Plaintiff:

(a) Actual damages in the amount of all policy benefits owed under the Policy, including the full Replacement Cost Value of the covered loss;

(b) Statutory interest at the rate of 18% per annum on all amounts owed from the date payment was due, pursuant to Texas Insurance Code §542.060;

(c) Additional damages for knowing violations of Texas Insurance Code Chapter 541 and the DTPA, not to exceed three times actual damages;

(d) Reasonable and necessary attorney's fees through trial and any appeal;

(e) Costs of court;

(f) Pre-judgment and post-judgment interest at the maximum rate allowed by law; and

(g) Such other and further relief, in law or equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

GULF COAST INSURANCE LAWYERS, P.C.
3233 West Dallas Street, Suite 2101
Houston, Texas 77019
Telephone: (713) 941-9309
Facsimile: (844) 270-0740

*/s/ Danny Ray Scott*

DANNY RAY SCOTT
State Bar No. 24010920
danny@gulfcoastinsurancelawyers.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record via electronic service on September 1, 2026.

*/s/ Danny Ray Scott*

DANNY RAY SCOTT